**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>La Casa De Las Flores Gourmet Kitchen LLC, et al.,<br><br>Defendants. | No. CV-24-00991-PHX-MTL<br><br>**ORDER** |

Plaintiff Joe Hand Promotions, Inc. ("JHP") moves for default judgment against Defendant Enrique Martinez ("Martinez") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "Motion"). (Doc. 11.) The Court will grant the Motion.

**I.   BACKGROUND**

As the Clerk of Court has entered default (Doc. 10), the Court accepts the complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

JHP's complaint alleges that Martinez unlawfully obtained and misappropriated the closed-circuit *Canelo Alvarez vs. John Ryder* broadcast ("Broadcast") on May 6, 2023, in violation of 47 U.S.C. § 553 or 47 U.S.C. § 605. (Doc. 1 ¶¶ 12-14, 19-22.) JHP distributes and licenses sporting events to commercial establishments such as bars and restaurants. (*Id.* ¶ 6.) JHP obtained a license to be the exclusive distributer of the Broadcast to commercial establishments like Martinez's. (*Id.* ¶ 7.) Commercial establishments who

wished to air the Broadcast were required to pay a sublicense fee to JHP. (*Id.* ¶ 9.) The amount that JHP charged licensees depended on the capacity of the commercial establishment. (*Id.*; Doc 11-1 at pg. 3.)

JHP alleges that Martinez, owner and operator of La Casa De Las Flores Restaurant & Bar ("Restaurant") and La Casa De Las Flores Gourmet Kitchen, LLC ("Kitchen") in Mesa, Arizona, intentionally pirated the Broadcast through either satellite or cable manipulation to avoid the licensing fee. (Doc. 1 ¶¶ 9, 12-17, 19.) After JHP's auditor discovered this misappropriation, the company sued Martinez and the Restaurant for violations of the Communications Act of 1934, as amended, 47 U.S.C. § 605, and the Television Consumer Protection Act, as amended, 47 U.S.C. § 553. (*Id.* ¶ 1; Doc 11-1 at 4.) JHP later dismissed Defendants Restaurant and Kitchen pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), leaving only Martinez as a Defendant. (Doc. 8.)

## II.  DISCUSSION

### A. Jurisdiction, Venue, and Service

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). JHP asserts claims arising under the Communications Act of 1934 and the Television Consumer Protection Act. (Doc. 1 ¶ 1.) The Court has subject matter jurisdiction over claims arising out of federal law. 28 U.S.C. § 1331. Both statutes give aggrieved private parties a civil right of action in this Court. *See* 47 U.S.C. § 553(c); 47 U.S.C. § 605(e).

JHP further alleges that venue and personal jurisdiction requirements are satisfied because all actions took place within this jurisdiction. (Doc. 1 ¶ 2.) Martinez owned, operated, maintained, and controlled the Restaurant when it aired the Broadcast. (*Id.* ¶ 5.) Since "a substantial part of the events or omissions giving rise to the claim" occurred in this district, venue is proper. 28 U.S.C. § 1391(b)(2). The Court similarly has personal jurisdiction over Martinez because he operates the Restaurant in Arizona. (Doc. 1 ¶ 4.)

Service is properly executed by delivering a copy of the summons and the complaint at the individual's dwelling and leaving it with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(B). Here, service was left with Rachel Florz, a person of suitable age and discretion who resided at Martinez's dwelling. (Doc. 6.) Therefore, Martinez was properly served.

### B. Default Judgment

Once a clerk of court enters default, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.2d 922, 923 (9th Cir. 2009) (noting the two-step process of default judgment: "Entering a Default" and "Entering a Default Judgment").

The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, JHP "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). JHP also bears the burden of proving all damages. *Szabo v. Sw. Endocrinology Assocs. PLLC*, No. CV-20-01896-PHX-DWL, 2021 WL 3411084, at *2 (D. Ariz. July 27, 2021).

### 1. The first, fifth, sixth, and seventh *Eitel* factors

Martinez has yet to respond or participate in this litigation; this traditionally means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (noting that the first, fifth, and sixth *Eitel* factors supported granting default judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect).

The first factor weighs in favor of default judgment because denying JHP's Motion will leave the company "without other recourse for recovery" due to Martinez's failure to appear in the suit. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true . . . no genuine dispute of material facts would preclude granting" the Motion. *Id.* Additionally, the sixth factor tips in favor of entering default judgment because Martinez was properly served under Rule 4(e)(2)(B). (Doc. 6.) *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (finding that a defendant's failure to answer is likely not a result of excusable neglect if the defendant is served properly).

As the Federal Rules of Civil Procedure favor a decision on the merits, the seventh *Eitel* factor generally weighs against default judgment; however, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). This factor is not sufficient on its own to preclude an entry of default judgment.

### 2. The second and third *Eitel* factors

The second and third *Eitel* factors, the merits of the claim and the sufficiency of the complaint, are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (quotation omitted). Here, JHP has sufficiently alleged that it would recover on the merits.

The main difference between the Television Consumer Protection Act and the Communications Act of 1934 is whether a communication was broadcasted over a cable or through another means. *Compare* 47 U.S.C. § 553(a) ("No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system"), *with* 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person"). *See also Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993). Section 605 allows for greater damages than § 553. *See G&G Closed Cir. Events LLC v. Alexander*, 2020 WL 1904628 at *3 (D. Ariz. Apr. 17, 2020). A plaintiff may only recover under one of the two statutes. *Id.*; *see also Sykes*, 997 F.2d at 1008. JHP recognizes that it may only recover under one of the statutes and has elected for damages under 47 U.S.C. § 605. (Doc. 11-1 at 6.). Therefore, the Court analyzes the claim under § 605, the Communications Act of 1934, and precludes recovery under § 553, the Television Consumer Protection Act.

The plain language of § 605(a) prohibits the "unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another." 47 U.S.C. § 605(a); *Alexander*, 2020 WL 1904628 at *2. To be held liable for a violation of § 605, a plaintiff must plead facts that a defendant: (1) was not authorized by the sender; (2) intercepted a radio communication; and (3) divulged or published the protected communication to any person. *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981).

As the facts in the complaint are accepted as true, *NewGen*, 840 F.3d at 617, Martinez was unauthorized by JHP to air the Broadcast. (Doc. 11-1 at 9.) Martinez must have taken wrongful action to intercept the Broadcast. Martinez aired the Broadcast to customers for his own financial benefit. (*Id.* at 3, 7.) JHP has sufficiently stated a claim upon which it can recover. *Vietnam Reform Party*, 416 F. Supp. 3d at 962. The Court finds that the second and third *Eitel* factors favor entry of default judgment.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake

related to the seriousness of the defendant's conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Streeter*, 438 F. Supp. 2d at 1071. JHP seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $10,500.00, along with costs and attorney's fees. (Doc. 11-1 at 15.) Given the claims listed in the complaint, the Court finds the amount requested is reasonable. As such, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Summary of *Eitel* factors

After reviewing JHP's complaint and Motion, and analyzing the *Eitel* factors, the Court finds that factors one through six weigh in favor of granting the Motion. The seventh factor weighs against default judgment by nature but is insufficient to outweigh the other factors. The Court finds that JHP is entitled to default judgment.

### C. Damages

Having found that entry of default judgment is proper, the only remaining issue is damages. At this stage, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *Geddes*, 559 F.2d at 560. Nonetheless, a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). JHP requests statutory damages under both 47 U.S.C. § 605(e)(3)(C)(i)(II) and enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).

### 1. 47 U.S.C. § 605(e)(3)(C)(i)(II) Statutory Damages

A damages award under § 605(e)(3)(C)(i) may be either actual or statutory. JHP claims that actual damages are "impossible" to prove due to the nature of its business model and the effect that Martinez's theft has on commercial establishments who may attempt to sublicense from JHP in the future. (Doc. 11-1 at 10-11.) As such, the company has elected for statutory damages, "in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). (Doc. 11-1 at 12.)

The reasonableness of a statutory award depends on a totality of circumstances, including the price of the dodged fee, how many patrons were served in an unlicensed telecast, and whether the broadcast theft harms a plaintiff's business. *See, e.g.*, *J & J Sports Prods., Inc. v. Spears*, 670 F. Supp. 3d 1273, 1276 (W.D. Okla. 2023) (maximum statutory award of $10,000 was appropriate for unlawfully exhibiting a fight); *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 341 (S.D.N.Y. 2009) ($1,025 award was appropriate based on the totality of circumstances); *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp. 3d 910, 916 (E.D. Cal. 2016) ($2,000 award was appropriate where a plaintiff had not established that enhanced statutory damages were warranted). Courts have also used deterrence, full compensation, and disgorgement of unlawful gain as damage magnifiers. *E.g.*, *Joe Hand Promotions., Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 667 (E.D. Va. 2013).

Martinez is liable for damages even if he was unaware that his unauthorized telecast violated the law, as § 605 is a strict liability statute. JHP requests $3,000.00 in statutory damages, double the licensing fee of $1,500.00 that Martinez should have paid. (Doc. 11-1 at 12.) Approximately fifteen people were in the Restaurant during the Broadcast and Martinez made sales while the Broadcast aired. (Doc. 1 ¶ 13.) JHP has sufficiently shown that their business was harmed by Martinez' actions. (Doc. 11-1 at 11.) And awarding more than the $1,500 sublicensing fee will deter others from similar conduct and disgorge Martinez of any unlawful gain he may have accrued. *Wing Spot*, 920 F. Supp. 2d at 667. Under the totality of circumstances, the Court finds that statutory damages in the amount of $3,000.00 is just.

### 2.  47 U.S.C. § 605(e)(3)(C)(ii) Enhanced Damages

JHP seek an enhancement under § 605(e)(3)(C)(ii) (Doc. 11-1 at 12-14), which authorizes an increased damages award "of not more than $100,000 for each violation of subsection (a)." This enhancement is available where the court finds that a "violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "We are generally reluctant to award

- 7 -

1  the statutory maximum [for enhanced damages] because it greatly exceeds the amount
2  necessary to compensate plaintiffs and is likely to destroy defendants' typically small
3  businesses." *Zalazar*, 653 F. Supp. 2d at 343 (citing *J & J Sports Prods., Inc. v. Dehavalen*,
4  2007 WL 294101, at *3 (S.D.N.Y. Jan. 30, 2007)). A 2.5 multiplier of the awarded
5  statutory damages is reasonable when calculating enhanced damages. *See Joe Hand*
6  *Promotions, Inc. v. Taco Spot III LLC*, No. CV-24-00993-PHX-ROS, 2025 WL 1079052
7  at *4 (D. Ariz. Apr. 10, 2025).

8  The Court finds that Martinez intercepted the Broadcast willfully and for financial gain. The Restaurant advertised on social media that it would air the Broadcast, enticing customers to spend money at the Restaurant during the Broadcast. (Doc. 1 ¶ 13.) While it is unclear whether Martinez charged a price for admission to see the Broadcast,[*] the Restaurant made sales while the Broadcast aired. (*Id.*) Martinez's conduct warrants enhanced damages.

14  JHP requests $7,500, 2.5 times the statutory damages under § 605(e)(3)(C)(i)(II). The Court finds that enhanced damages of $7,500 will further the statutory goal of deterring other instances of unlawful interception.

### 3. Damages Summary

The Court finds that JHP is entitled to default judgment against Martinez. The Court will award the requested $3,000.00 in statutory damages and $7,500.00 in enhanced damages, for a total of $10,500.00. As JHP has prevailed on its claims, it is entitled to "the recovery of full costs, including awarding reasonable attorney's fees . . . ." 47 U.S.C. § 605(e)(3)(B)(iii).

. . . .

. . . .

. . . .

. . . .

---

[*] JHP claims that Martinez charged an entrance fee to view the fight at the Restaurant (Doc. 11-1 at 11, 14), but there is no evidence of a cover charge within the complaints or the affidavits.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Plaintiff's Motion for Default Judgment. (Doc. 11.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in favor of Plaintiff in the amount of $10,500.00 and close this case. This amount shall be subject to post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FUTHER ORDERED** that JHP may file a motion for attorney's fees and taxable costs in accordance with LRCiv 54.1 and 54.2 within fourteen (14) days of this Order.

Dated this 4th day of June, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge